# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Tasha Jean Kotz, Respondent.

Appellate Case No. 2025-002189

Opinion No. 28317
Submitted December 11, 2025 – Filed February 18, 2026

**DEFINITE SUSPENSION**

Disciplinary Counsel William M. Blitch, Jr. and
Assistant Disciplinary Counsel Phylicia Yvette Christine
Coleman, both of Columbia, for the Office of
Disciplinary Counsel.

Barbara Marie Seymour, of Clawson & Staubes, LLC, of
Columbia, for Respondent.

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, Respondent admits misconduct, agrees to pay
costs, and consents to the imposition of a public reprimand or a definite suspension
of up to six months, along with other conditions.  We accept the Agreement and
suspend Respondent from the practice of law in this state for six months.

## I.

Respondent was admitted to practice in 2017, and she has no prior disciplinary
history.  In 2023 and 2024, a total of three disciplinary complaints were filed
against Respondent alleging practice-related misconduct.  The pertinent facts of
these complaints are as follows.

*Matter A*

The first disciplinary complaint involves three instances—June 2, 2022; January 2, 2023; and July 28, 2023—in which Respondent requested a continuance in various family court matters on the basis that she had tested positive for Covid-19. To demonstrate that she actually had contracted Covid-19, Respondent texted a photograph of two positive Covid-19 tests sitting on a countertop to opposing counsel in each case. The three different opposing lawyers became aware of these recurrences and compared the photos they had each received. Believing them to all be the same photograph, the lawyers filed a complaint with ODC. In her initial response to ODC, Respondent claimed they were different pictures. However, ODC's investigation subsequently revealed Respondent sent the same photo in each of the three instances, and the metadata from the photograph indicated it was taken on April 20, 2022—forty-three days prior to the first scheduled hearing, 245 days prior to the second, and 464 days prior to the third.

*Matter B*

In the second matter, a family court client left a negative review of Respondent's services on her firm's Facebook page. From her personal Facebook profile, Respondent commented on the client's post, sharing private details about the case including the statement that "Parents who don't listen to their attorneys, do not win custody battles," and "Parents who post affairs during marriage on social media, do not win custody cases." The second statement was accompanied by a photograph of the client and another person (presumably the client's paramour). Respondent claims she has no recollection of the client's negative review or her responses to it; however, she does not deny she made the improper comments.

*Matter C*

In the third matter, Respondent submitted an improperly signed and notarized affidavit in a family court filing.[1] The client's ex-wife informed Respondent that the signature on the affidavit was not the client's signature, but Respondent did not look into the matter, claiming she "had reason to believe that the ex-wife was not

---

[1] The affidavit was signed by the client's mother and notarized by Respondent's husband at a later date.

credible."[2]  The ex-wife subsequently retained counsel, who filed a Rule 60 motion, arguing that Respondent's client submitted a fraudulent affidavit he never signed and filed a motion to remove Respondent from the case.  A consent order of substitution was subsequently filed, and Respondent informed the client's new attorney that the improperly signed affidavit needed to be corrected, rather than informing the court herself as she should have done.  Respondent admits that submission of the affidavit constituted a misrepresentation to the family court and the opposing party that the signature on the document was genuine and that the document had been properly notarized.

## II.

Respondent admits that her conduct in Matter A violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 4.1(a) (requiring truthfulness in statements to others); Rule 8.4(d) (prohibiting conduct involving dishonesty or misrepresentation); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice).  Respondent also admits that her conduct in Matter B violated Rule 1.9(c)(2), RPC, Rule 407, SCACR (prohibiting a lawyer who has formerly represented a client to thereafter reveal information relating to the representation).  Respondent further admits her conduct in Matter C violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (requiring competence); Rule 3.3(a)(1) (requiring a lawyer to correct a false statement of material fact previously made to the tribunal by the lawyer); 3.3(a)(3) (prohibiting a lawyer from offering false evidence); Rule 5.3(c)(2) (providing a lawyer is responsible for the conduct of a non-lawyer assistant that would be a violation of the Rules of Professional Conduct of engaged in by a lawyer); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice).  Lastly, Respondent admits her misconduct constitutes grounds for discipline under Rule 7(a)(1), RLDE, Rule 413, SCACR (prohibiting a violation of the Rules of Professional Conduct).

In her affidavit in mitigation, Respondent accepts full responsibility and offers no excuses for her conduct.  Respondent explains that she has a medical condition that makes her particularly susceptible to Covid-19 and that she contracted the virus several times.  However, Respondent insists that she never intended to leverage

---

[2] The ex-wife apparently also included a photo of the client's actual signature for comparison and explained that the client was in New Jersey on the date the document was notarized.

being sick as an excuse for delaying her clients' cases. Rather, she emphasizes her primary goal was to avoid spreading the virus.

Respondent states she understands she is responsible for ensuring honesty with opposing counsel and the Court, including ensuring the authenticity and propriety of affidavits. Respondent avers she is "committed to ensuring that all affidavits filed in her clients' cases are properly prepared, executed, and notarized" in the future. As for the Facebook comments, Respondent acknowledges that regardless of how misplaced she feels online criticism from a client might be, she should never publicly share information about a client matter, particularly for purposes of self-vindication. Respondent maintains that she will not allow her personal feelings to cloud her ethical judgment in the future.

Enclosed with her affidavit in mitigation were three character letters describing Respondent as a conscientious and involved member of the Charleston County family court bar. Respondent also urges the Court to consider her lack of prior discipline, her acknowledgement of mistakes and expression of genuine remorse, her lack of dishonest or selfish motive, and her willingness to take voluntary remedial action by implementing an ongoing law firm training program regarding proper notarization of documents.

As noted above, Respondent agrees to the imposition of a public reprimand or a definite suspension of up to six months. Respondent has already attended the LEAPP Ethics School in March 2024, and she also agrees to pay costs, undergo additional training on proper notary procedures, and adopt a detailed, written training program for her office staff on the law of notarization in South Carolina. Respondent also agrees to conduct an additional four CLE hours on topics relating to law office management and staff supervision and four extra CLE hours on litigation ethics—a total of eight hours in addition to the annual CLE requirements. The Commission on Lawyer Conduct recommends the Court accept the Agreement and impose a six-month definite suspension.

## III.

In light of both the seriousness of Respondent's misconduct and the mitigating factors present, including Respondent's lack of prior disciplinary history, genuine remorse, voluntary remedial action, and consent to educational conditions designed to prevent future similar misconduct, we find a six-month definite suspension is an adequate sanction in this matter. Accordingly, we suspend Respondent from the

practice of law in this state for a definite period of six months from the date of this opinion.

Within thirty days, Respondent shall: (1) pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission; (2) view the South Carolina Notaries Public Webinar presented by the Secretary of State and adopt a detailed, written training program for existing and future law firm employees on the law of notarization in South Carolina, which shall include reading the South Carolina Notary Public Reference Manual, watching the South Carolina Notaries Public Webinar, and in-person training with Respondent on the appropriate process for witnessing and notarizing documents. Respondent shall also facilitate an annual meeting of all law firm employees to review the process and law related to notarization with particular emphasis on changes to the Notary Public statue, if any; and (3) within one year, Respondent shall complete four extra hours of continuing legal education on topics related to law office management and staff supervision and four extra hours of continuing legal education on litigation ethics, for a combined total of eight extra hours of continuing legal education beyond the annual MCLE requirements.

Within fifteen days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that she has complied with Rule 30, RLDE, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

**KITTREDGE, C.J., FEW, JAMES, HILL and VERDIN, JJ., concur.**